UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NATIONAL WESTERN LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> WESTERN NATIONAL LIFE INSURANCE COMPANY, and AGC LIFE INSURANCE COMPANY <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. A09CA711 LY |

**DEFENDANTS' MOTION AND INTEGRATED MEMORANDUM
UNDER FEDERAL RULE OF EVIDENCE 702 TO EXCLUDE
<u>PLAINTIFF'S EXPERT JEFFREY M. SAMUELS</u>**

Defendants Western National Life Insurance Company ("WNL") and AGC Life Insurance Company ("AGC"), by and through their undersigned counsel, hereby file this Motion and Integrated Memorandum, stating as follows.

**<u>Certificate of Conferral</u>**

Counsel for Defendants certifies that he has in good faith conferred with counsel for Plaintiff National Western Life Insurance Company ("NWL") about the relief sought herein, and counsel for Plaintiff does not consent to such relief.

**INTRODUCTION**

In this trademark infringement action, Plaintiff NWL alleges that Defendants' use of the mark Western National improperly causes a likelihood of confusion with NWL's mark. Plaintiff makes such allegations despite:

- Plaintiff's own choice to adopt the National Western name in 1956 despite

1

469500

- Defendant's use of the Western National name beginning eight years earlier in 1948;

- The parties' more than four decades of co-existence without incident using the name now at issue in this lawsuit; and

- NWL's own admission to the United States Patent and Trademark Office ("PTO") in 2002 that, contrary to the positions now taken in this lawsuit, "This different mental impression between Applicant's mark and Registrant's mark point away from a likelihood of confusion."

In an effort to avoid its own admissions to the PTO, Plaintiff NWL puts forward Jeffrey M. Samuels as a purported expert on legal issues. Samuels' purported expertise stems from his having taught trademark-related courses at the law school, practiced law "with an emphasis on trademark and unfair competition law," and held prior positions within the PTO. Ex. A (Samuels Report ¶¶ 3-4; *see also* Exhibit B to Samuels Report (Jeffrey M. Samuels *curriculum vitae*)). Samuels was expressly retained "to offer expert opinions regarding various trademark issues." (*Id.* ¶ 1).

Because Samuels offers only opinions that are legal conclusions, his opinions are not relevant to any factual issue in this case and violate Federal Rule of Evidence 702. Additionally, his opinions consist of unreliable conjecture without any discernible basis and simply mimic NWL's arguments and assertions. Recently, another court concluded that similar opinions of Samuels in a trademark case suffered from these same fatal flaws and barred his report and testimony. *See Kerzner Int'l Ltd. v. Monarch Casino & Resort, Inc.*, No. 3:06-CV-232, 2009 WL 5066908, at *3 (D. Nev. Dec. 14, 2009).

**LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence allows for expert testimony in certain circumstances:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Under the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, before a purported expert's testimony may be admitted, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying [proposed expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  509 U.S. 579, 592-93 (1993).  The trial court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The proponent of an expert bears the burden of establishing that the expert's opinions are reliable.  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

*Daubert* lists factors a court should use to determine the admissibility of expert testimony, including whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community.  509 U.S. at 593-94.  Although a court also has discretion to consider other factors, "[i]n the vast majority of cases, the district court first should decide whether the factors

mentioned in *Daubert* are appropriate." *Black v. Food Lion, Inc.*, 171 F.3d 308, 311-12 (5th Cir. 1999). Whether Daubert's suggested indicia of reliability apply to any given testimony is a fact-specific inquiry dependant on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000). "[A]ny step that renders the analysis unreliable . . . renders the expert testimony inadmissible." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

## ARGUMENT

**I.    Samuels' Report Offers Only Legal Opinions Reciting Plaintiff's Allegations**

Samuels is a law professor with approximately five years experience working at the PTO. He submitted an expert report in this case (the "Samuels Report") and attached his *curriculum vitae* as Exhibit B to the report. At his deposition on October 4, 2010, Samuels testified that his written report reflects all his opinions in this case and that he has no intention of revising or supplementing that report. Ex. B (Samuels Dep. 9:5-11:12).

The vast bulk of the Samuels Report consists of: a recital of the allegations in the pleadings and the history of the parties' trademark applications (*see* Samuels Report ¶¶ 9-11, 13-19); general descriptions of trademark law and the Lanham Act (*see id.* ¶¶ 12-13, 15); and descriptions of the PTO and its policies and procedures (*see id.* ¶¶ 11-13). The only "opinions" offered in the report are legal opinions as to: (1) the effect of a trademark cancellation on the PTO's evaluation of a trademark application; and (2) what legal steps Defendants may have been able to take to clarify their trademark rights prior to Western's name change (*id.* ¶¶ 18, 21). Specifically, Samuels asserts three "opinions":

1. "[A]s a result of the . . . decision to suspend further prosecution of Plaintiff's application to register NATIONAL WESTERN LIFE INSURANCE COMPANY and the subsequent cancellation of the '786 registration, in my opinion it was not

4

469500

necessary for the Trademark Examining Attorney to consider arguments by Plaintiff's counsel in contesting the refusal to register." (*Id.* ¶ 18).

2. "[I]n my opinion, one cannot say whether the Examining Attorney would or would not have withdrawn the refusal to register on grounds of likelihood of confusion if the '786 registration had not been cancelled." (*Id.*)

3. Referring to NWL's refusal to sign a coexistence agreement or answer whether it thought Western was infringing its marks, Samuels asserts: "In my opinion, one avenue of relief that may have been available to [Western] was to file a declaratory judgment action and seek a declaration that use of the name 'Western National Life Insurance Company' would not infringe any valid trademark rights of Plaintiff National Western Life Insurance Company." (*Id.* ¶ 21).

## II. The Opinions Offered by Samuels Are Not Relevant or Reliable

It is the Court's role as a "gatekeeper" of expert testimony under Rule 702 to "permit only reliable and relevant expert testimony to be presented to the jury." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009); *see also Sundance, Inc. v. Demonte Fabricating Ltd.,* 550 F.3d 1356, 1360 (Fed. Cir. 2008) ("[C]ourts are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant."). Samuels' opinions fail to satisfy either prong of that standard.

### A. Samuels' Opinions Should Be Excluded as Irrelevant

Legal conclusions are not proper subjects for expert testimony. *See, e.g.*, *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law."); *C.P. Interests, Inc. v. Calif. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) ("Neither [Rule 702 nor Rule 704] permits an expert witness to offer conclusions of law."). Similarly, the Federal Circuit "has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law." *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997); *see also Shuffle Master, Inc.* v. *MP Gaines LLC,* 553 F. Supp. 2d 1202, 1208 (D. Nev. 2008) (holding that legal conclusions stemming from attorney's experience

5

working at the PTO cannot properly be considered as factual evidence). That same principle applies to trademark lawyers offering legal opinions on trademark claims.

Samuels' opinions are limited to legal conclusions that apparently stem from his experience working at the PTO or practicing intellectual property law and as such cannot properly be considered as factual evidence. First, Samuels asserts that because of the cancellation of the '786 trademark, "it was not necessary for the Trademark Examining Attorney to consider arguments by Plaintiff's counsel in contesting the refusal to register." (Ex. A ¶ 18). Setting aside the conjectural nature of this opinion (discussed below), the effect of a trademark cancellation in a particular case are legal questions on which expert testimony is not permitted.

In *Kerzner*, Samuels sought to provide similar improper expert testimony leading the courts to exclude his testimony. For example, his *Kerzner* expert report opined that the plaintiff's activities "do[] not establish 'use in commerce' of the [plaintiff's] mark" (Ex. C, *Kerzner* Expert Report of Jeffrey M. Samuels ¶ 21) and that the plaintiff's trademark registration "affords [plaintiff] no trademark rights with respect to such services in the U.S." (*Id.* ¶ 22). The *Kerzner* district court excluded Samuels, stating:

> The legal effect . . . of a federal trademark registration can and should be explained to the jury. But this can be accomplished by means of appropriate jury instructions. It is the role of the Court, not an expert witness, to inform the jury of the law applicable to the case. At best, Dr. Samuels' testimony would be repetitious of those jury instructions, and at worst would confusingly conflict with them. . . . . To the extent his opinions may have some probative value, it appears that his testimony would be repetitive of matters the Court will be explaining in the jury instructions or likely would be more confusing than helpful to the jury.

*Kerzner Int'l Ltd.*, 2009 WL 5066908, at *3. The same is true as to Samuels' opinions regarding the effect of cancellation of the '786 registration.

Second, Samuels states that "one cannot say whether the Examining Attorney would or would not have withdrawn the refusal to register on grounds of likelihood of confusion if the

'786 registration had not been cancelled." (Ex. A ¶ 18). In addition to being vague and inconclusive conjecture, this discussion is either entirely irrelevant to this case (if it relates only to what a particular PTO attorney would or would not have done in a hypothetical situation) or goes directly to one of the ultimate legal questions in this case—whether there is a likelihood of confusion between the parties' marks. Either way, it is not properly the subject of expert testimony and should be excluded.

Third, Samuels testifies that Defendants "may have" been able to file a declaratory judgment seeking a declaration that their use of "Western National Life Insurance Company" would not infringe NWL's trademark rights. (*Id.* ¶ 21). Like his other opinions, whether a particular legal process is "available" to a party (*id.*) is a quintessential legal question and is not an appropriate subject for expert opinion testimony.

Put simply, Samuels' testimony is an impermissible effort to obtain the benefit of an additional lawyer to lend credence to their legal arguments. *See Shuffle Master*, 553 F. Supp. 2d at 1209 ("Sidestepping the relevance issue allows a party to retain and present the argument of outside counsel as expert factual evidence. This is impermissible . . . ."); *Sundance*, 550 F.3d at 1364-65 (prohibiting expert testimony that "amounts to nothing more than advocacy from the witness stand"). Moreover, Samuels' opinions simply mimic the arguments and assertions of Plaintiff's counsel and, as such, are inadmissible. *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987) ("Dr. Johnson's testimony is no more than [plaintiff's] testimony dressed up and sanctified as the opinion of an expert. Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.").

The Samuels Report and testimony are irrelevant and should be excluded.

7

469500

B.  Samuels' Opinions Should Be Excluded as Unreliable Conjecture

In addition to the requirement that expert evidence "assist the trier of fact," Rule 702 also requires that the evidence "is the product of reliable principles and methods." Fed. R. Evid. 702; *see also Daubert v. Merrill Dow Pharms., Inc.,* 509 U.S. 579, 590 (1993). This requires that the expert opinion be "more than unsupported speculation or subjective belief." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).

In addition to constituting improper legal conclusions, Samuels' opinions are vague and unsupported speculation. Samuels hedges his opinions with language that makes them nothing more than inconclusive conjecture, stating that a declaratory judgment "*may have* been available"; opining that it was "not *necessary*" for the PTO to consider certain arguments (while expressing no opinion as to whether the PTO did or should consider those arguments); and even expressly recognizing that "one cannot say" whether the PTO would have withdrawn its refusal to register NWL's mark. (Ex. A ¶¶ 18, 21 (emphases added)). Such inconclusive conjecture does not qualify as proper opinion, let alone satisfy the requirement that the opinion be "the product of reliable principles and methods." Fed. R. Evid. 702.

Samuels also fails to provide any basis or support for his opinions. There is no indication that his opinions are based on scientifically valid reasoning or anything "more than unsupported speculation or subjective belief." *Curtis*, 174 F.3d at 668; *see also Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996) ("This is not a scientific study. This is a legal opinion."; affirming exclusion of expert testimony because of "absence of scientifically valid reasoning, methodology and evidence supporting these experts' opinions"). There is thus nothing to which the Court can apply the *Daubert* factors—or any other type of analysis—to come to a conclusion of reliability.

Samuels' opinions are full of equivocation and are not based on any reliable scientific or technical methodologies, but are rather unsupported and inconclusive speculation.  The Samuels Report and testimony should therefore be excluded as unreliable.

## CONCLUSION

WHEREFORE, Defendants respectfully requests that the Court grant their Motion to Exclude Plaintiff's Expert Jeffrey M. Samuels—including his Expert Report, deposition testimony, and any other expert testimony—under Rule 702 of the Federal Rules of Evidence.

Dated: October 15, 2010.

Respectfully submitted,

*/s/ Kent C. Modesitt*
Larry Pozner
Kent C. Modesitt
Michael A. Rollin
Michelle M. Berge
REILLY POZNER LLP
511 Sixteenth Street, Suite 700
Denver, Colorado 80202
Telephone:  (303) 893-6100
Facsimile:  (303) 893-6110
lpozner@rplaw.com
kmodesitt@rplaw.com
mrollin@rplaw.com
mberge@rplaw.com

and

James J. Scheske
AKIN GUMP STRAUSS HAUER & FELD LLP
300 West 6th Street, Suite 2100
Austin, Texas 78701
Telephone: (512) 499-6243
Facsimile: (512) 499-6290
jscheske@akingump.com

ATTORNEYS FOR WESTERN NATIONAL LIFE INSURANCE COMPANY

469500

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>J. Roger Williams, Jr.
>Andrews Kurth LLP
>111 Congress Ave., Ste. 1700
>Austin, TX 78701
>rwilliams@andrewskurth.com

>>>>>>/s/ Kent C. Modesitt