IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL WESTERN LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No. 1:09-cv-00711-LY |
| WESTERN NATIONAL LIFE INSURANCE COMPANY, *et al.*, | § § § | |
| Defendants. | § § | |

**NATIONAL WESTERN LIFE INSURANCE COMPANY'S MOTION TO COMPEL
DISCLOSURE OF PRIVILEGED DOCUMENTS AND COMMUNICATIONS**

National Western Life Insurance Company ("National Western") in this action accuses Western National Life Insurance Company ("Western National" or "Defendant") of infringing its registered trademark in *inter alia* NATIONAL WESTERN LIFE INSURANCE COMPANY by Defendant's underwriting and marketing of annuities under the mark and name Western National Life Insurance Company. Previously known as AIG Annuity Insurance Company, Defendant adopted its current trade name attempting to escape the bad reputation of AIG arising from its central role in the global financial crash of 2008. Before changing its name, Defendant consulted with AIG's intellectual property team in New York and with outside trademark counsel. Thereafter, Western National waived any applicable privileges when it voluntarily disclosed the substance of those privileged communications to the Texas Department of Insurance ("TDI"). Despite this waiver, and their clear relevance to the parties' claims and defenses, Western National has invoked the attorney-client privilege to block discovery of its communications with

AUS:633305.6

AIG and outside counsel. National Western now moves to compel the disclosure of these communications and all evidence relating to them.

## Statement of Facts

An indirect subsidiary of the American International Group, Inc. ("AIG"), from 2002 to 2009, Western National used the trade name AIG Annuity Insurance Company ("AIG AIC"). In 2009, however, AIG's complicity in the global financial meltdown spurred AIG affiliates to distance themselves from the tarnished AIG brand, including, as in Western National's case, by changing names.[1]

In January 2009, as AIG AIC explored changing its name to Western National Life Insurance Company, Jim Coppedge ("Coppedge"), general counsel for AIG AIC, sought legal advice regarding the name change from (i) AIG New York's in-house intellectual property (IP) lawyer Shama Elliott, Elizabeth Pearce, and other members of the AIG IP team, and (ii) outside trademark counsel Mark Liss, Mark Diliberti, and Kevin Fitzgerald.[2] These discussions revealed a "potential conflict" with National Western Life Insurance Company.[3]

As a Texas insurance company, Defendant required TDI's consent to change its name. In February 2009, Defendant initiated the process of obtaining approval from TDI of the name change, and on March 20, 2009, TDI issued an amended Certificate of Authority authorizing the company to sell insurance in Texas under the name Western National Life Insurance Company.[4] As a condition of the approval, however, TDI required Western National to send a name change

---

[1] App. Ex. 2 (Coppedge Dep.) at 108:14-22.
[2] *Id.* at 52:1-10, 65:13-18.
[3] App. Ex. 6 (Apr. 28, 2010 E-mail String); App. Ex. 7 (Apr. 29, 2009 Letter to Saenz).
[4] App. Ex. 4 (Mar. 20, 2009 Official Order of the Commissioner of Insurance).

notice to each policyholder within forty-five (45) days of issuance of the amended Certificate of Authority.[5]

Jim Coppedge then informed National Western that Defendant was considering using the name Western National Life Insurance Company and asked National Western to sign a co-existence agreement that would permit Western National to use the name without objection by National Western.[6] National Western refused to enter into such an agreement and in mid-April informed Western National that it reserved its rights to sue any entity that infringed its marks.[7] "Concerned" by National Western's response, and recognizing that the threat of legal action by National Western jeopardized its ability to comply with the 45-day notice requirement, Western National sought regulatory assistance from TDI.[8] Coppedge enlisted the help of Ted Kennedy, an AIG attorney who handled government relations with TDI for AIG entities.[9]

Coppedge sent Kennedy an e-mail (the "4/28 Coppedge E-mail") to provide background about why Western National decided to change its name, and how that decision was made.[10] Coppedge wrote:

> Given the marketing issues associated with the AIG name, the Company's management team made a decision in early January to return to the use of the Western National Life Insurance Company name. At that time, I discussed the decision with AIG's intellectual property team in New York, and we obtained preliminary feedback from outside counsel, noting the potential conflict with National Western Life Insurance Company. Given our almost thirty (30) year

---

[5] App. Ex. 4; App. Ex. 6.

[6] App. Ex. 3 (Mar. 31, 2009 Letter from Coppedge to Payne).

[7] App. Exs. 6, 7.

[8]  App. Ex. 5 (Kennedy Dep.) at 104:8-14; App. Ex. 2 (Coppedge Dep.) at 248:15-22, 266:15-24.

[9] App. Ex. 5 (Kennedy Dep.) at 8:3-20, 75:6-76:8; App. Ex. 2 (Coppedge Dep.) at 125:15-17; App. Ex. 6.

[10] App. Ex. 5 (Kennedy Dep.) at 75:25 - 76:8, 95:2-13.

3

> history of coexistence with National Western, we decided to move forward without making further inquiry.[11]

Coppedge's e-mail goes on describe Western National's communications with National Western regarding a co-existence agreement, and National Western's assertion of its trademark rights. Coppedge finishes the e-mail: "I think by the end of the week we will have the approval from AIG New York to move forward notwithstanding the ambiguity left by National Western."

Despite recognizing the privileged nature of the 4/28 Coppedge E-mail, Kennedy forwarded the e-mail to TDI Commissioner Danny Saenz.[12] Above Coppedge's e-mail, Kennedy writes:

> Forgive the informality of this information, but I didn't want to waist [sic] any time in getting it to you . . . . As noted below, we are now concerned that one of our competitors, National Western Life Insurance Company might take action against us. Accordingly, please consider this our formal request to extend the time with which we have to provide our policyholder notice while we address this concern and also serve as an intermediary or in some other capacity to help facilitate a quick resolution with National Western.

The next day (April 29) Kennedy sent a "snail mail" letter (the "4/29 Letter") formally requesting a tolling of the 45-day deadline.[13] This letter was intended to provide TDI with a synopsis of the issue with National Western "from our [Western National's] perspective."[14] The synopsis is substantially the same as that found in the 4/28 Coppedge E-mail, with one notable exception. The 4/28 Coppedge E-mail concludes the paragraph regarding the knowledge of the potential conflict with National Western as follows: "[g]iven our almost thirty (30) year history

---

[11] App. Ex. 6.

[12] App. Ex. 5 (Kennedy Dep.) at 78:11 - 79:4; App. Ex. 6.  There is no claim of privilege as to the 4/28 Coppedge E-mail.  Although it initially withheld a version of the 4/28 Coppedge e-mail as privileged, Western National subsequently produced the e-mail.  *Cf* App. Ex. 10 *with* App. Ex. 6.  *See* App. Ex. 13 (Defendants' Privilege Log) at Control Number 1247; App. Ex. 5 (Kennedy Dep.) at 78:11-79:24.  National Western obtained App. Ex. 6 via an Open Records request to the TDI.  *See* App. Ex. 17 (Williams Decl.) at ¶7.

[13] App. Ex. 7.

[14] App. Ex. 7; App. Ex. 5 (Kennedy Dep.) at 108:14 - 109:15.

4

of coexistence with National Western, we decided to move forward without making further inquiry."[15]  The 4/29 Letter, however, alters this conclusion:

> Given the marketing issues associated with the AIG name, the Company's management team made a decision in early January to return to the use of the Western National Life Insurance Company name. At that time, AIG intellectual property team in New York obtained preliminary feedback from outside counsel, noting the potential conflict with National Western Life Insurance Company. ***All parties agreed***, given our almost thirty (30) year history of coexistence with National Western, ***there should not be a problem***.[16]

At least some portions of the 4/29 Letter were written by Coppedge.[17]  Coppedge wanted TDI to know that WNL had been careful in its dealings addressing the trademark issues.[18]

Western National has repeatedly invoked attorney-client privilege to block discovery of (a) the substance of the communications between Western National and AIG's IP team and outside trademark counsel during the early part of 2009, and (b) the communications between Western National and AIG relating to the "approval from AIG New York to move forward notwithstanding the ambiguity left by National Western" referenced in the 4/29 Letter.[19]  The parties conferred but were unable to come to agreement regarding whether there had been a waiver of attorney-client privilege.[20]

## Argument

"A corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the

---

[15] App. Ex. 6.

[16] App. Ex. 7 (emphasis supplied).

[17] App. Ex. 2 (Coppedge Dep.) at 84:6 - 85:10; App. Ex. 5 (Kennedy Dep.) at 109:8-15.

[18] App. Ex. 2 (Coppedge Dep.) at 266:15 - 268:5; App. Ex. 7.

[19]  *See infra* Footnotes 31 and 34.

[20] App. Exs. 15, 16 (Correspondence between counsel regarding waiver).

communications were made to obtain legal services."[21] However, because the privilege impedes the full and free discovery of truth, it should be strictly construed.[22] Voluntary disclosure of the privileged communications to third parties, for instance, waives the privilege.[23] Waiver for one communication results in waiver for all communications on the same subject.[24] As the Fifth Circuit explained in *Nguyen*, a client implicitly waives the privilege by revealing selective portions of attorney-client communications.[25] Thus, when the *Nguyen* defendants revealed during depositions the direction they gave their attorneys, and that their attorneys had undertaken legal research on certain topics, Plaintiff was entitled to discover all communications on the revealed topics, including their attorneys' legal conclusions.[26]

## I.     The Waived Topics.

There are two distinct (but related) communications at issue in this motion: (i) the communications between Jim Coppedge and AIG's IP team, and/or outside counsel Mark Liss, Mark Diliberti, and/or Kevin Fitzgerald concerning the name change decision, the preliminary feedback from outside counsel noting the "potential conflict," the history of coexistence with National Western, the decision to "move forward" without further inquiry, and the consensus of "all parties" that "there should not be a problem"; and (ii) the communications between Western National and AIG's IP team in and around April 2009 regarding whether to proceed with the

---

[21] *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).

[22] *AHF Community Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 146 (N.D. Tex. 2009).

[23] *Nguyen v. Excel Corp.*, 197 F.3d at 207.

[24] *Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp.*, 2006 WL 1544621 at *3 (W.D.Tex. 2006).

[25] *Nguyen*, 197 F.3d at 207.

[26] *See e.g. Nguyen*, 197 F.3d at 210-211.  *See also In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996) (laboratory's disclosure in a conversation with a Medicaid fraud investigator of its attorney's "legal conclusion and the reasoning behind the conclusion" waived the privilege and required disclosure of communications relating to "specific marketing plan points" discussed in that conversation).

name change in light of National Western's rejection of the co-existence agreement. Collectively this motion refers to these communications as the "**Waived Topics**."

The communications on each of these Waived Topics are directly relevant to the parties' claims and defenses. Defendant's knowledge of National Western and awareness in or before February 2009 of the "potential conflict" with National Western, and the self-confessed failure to take any steps to investigate the "potential conflict" ("we decided to move forward without further inquiry"), go directly to Defendant's intent in selecting the mark Western National Life Insurance Company, and are therefore directly relevant to the following:

- likelihood of confusion, because the accused infringer's intent in selecting its mark with knowledge of the prior mark is one of the "digits of confusion;"[27] and
- Whether Western National willfully or deliberately infringed National Western's marks, which is relevant to whether this case is "exceptional" for purposes of an award of attorneys' fees and whether National Western is entitled to Western National's profits.[28]

The conversations with AIG regarding authorization to proceed despite knowledge of National Western's objections are relevant to all the topics above as well as Defendants' defenses of laches, acquiescence, and estoppel. To the extent that Western National failed to disclose to TDI its awareness of the "potential conflict" with National Western, National Western is entitled to use this information to impeach TDI's approval of Defendants' name change, a fact that features prominently in Defendants' pleadings.[29]

---

[27] *See Scott Fetzer Co. v. House of Vacuums*, 381 F.3d 477, 486 (5th Cir. 2004) (Defendant's intent is one of the digits of confusion).

[28] 15 U.S.C. § 1117(a). *Schlotzsky's, Ltd. v. Sterling Purchasing and Nat'l Distribution Co., Inc.*, 520 F.3d 393, 402 (5th. Cir. 2008) ("An exceptional case involves acts that can be called 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'"); *Pebble Beach Co. v. Tour 18 Limited*, 155 F.3d 526, 554 (5th Cir. 1998) ("intent to confuse or deceive" is a factor in determining whether to award defendants profits under 15 U.S.C. § 1117(a)).

[29] *See* Western National's First Am. Countercls. ¶¶ 18, 37; Western National's Answer to Pl.'s Corrected First Am. Compl. ¶¶ 36, 77, & Ex. 1 thereto.

7

## II. Waiver Of Privilege In Communications Between Western National And AIG's IP Team And/Or Outside Counsel.

Jim Coppedge, acting on behalf of Western National, consulted with and obtained legal advice from AIG's IP team and outside counsel (Mark Liss, Mark Diliberti, and Kevin Fitzgerald) in connection with Defendant's decision to change its corporate name to Western National Life Insurance Company in February 2009.[30] Western National has repeatedly invoked attorney-client privilege to block discovery of these communications.[31] However, Western National disclosed—and therefore waived all privilege in—the substance of these communications when it informed TDI of the discussions with AIG's IP team and the "preliminary feedback from outside counsel," the advice regarding the "potential conflict" with National Western, the decision to move forward without making further inquiry based on "our almost thirty (30) year history of coexistence with National Western," and that "all parties agreed . . . there should not be a problem."[32]

## III. Waiver of Privilege In Communications In And Around April 2009 With AIG's IP Team Regarding Approval To Proceed Despite National Western's Objections.

Jim Coppedge also consulted with and obtained legal advice from AIG's IP team about whether Western National should go ahead with the name change despite National Western's

---

[30] *See* App. Ex. 2 (Coppedge Dep.) at 51:22-52:10, 52:24 - 54:25, 55:18-58:19, 61:22 - 69:1, 69:13 - 71:25. App. Exs. 6, 7.

[31] *See* App. Ex. 2 (Coppedge Dep.) at 54:17 - 56:4, 56:18 - 57:11, 57:24 - 58:19, 58:25 - 59:14, 60:22 - 61:21, 69:13 - 70:15, 71:16-25, 72:19-24, 74:7-25, 80:2-21, 81:22 - 82:5, 82:6-16, 87:25 - 88:22, 90:4-11, 93:7-15, 96:19 - 97:5, 138:6-23, 149:10 - 150:1, 154:25 - 155:19, 175:3 - 176:16, 176:21 - 177:5, 179:8 - 180:16, 199:4-23, 233:20 - 234:18, and 235:19 - 236:9; App. Ex. 5 (Kennedy Dep.) at 95:14-19, 96:3-19, 98:9-25, 116:13-19, and 117:10 - 119:13; App. Ex. 11 (Abrams Dep.) at 126:17 - 128:12, 129:14 - 130:10, 132:12-25, 135:11-16, 136:1-4, and 148:16-25. *See also* App. Ex. 8 (Western National Life Insurance Company's Resp. to Pl.'s First Set of Reqs. for Prod.) at Nos. 37, 50 & 51; App. Ex. 9 (Western National Life Insurance Company's Resp. to Pl.'s Second Set of Reqs. for Produc.) at Nos. 69, 70; App. Ex. 13. *See also* App. Ex. 2 (Coppedge Dep.) at 38:14-39:1, 39:8-14, 40:10-17, 41:7-9, 42:24 - 43:5, 49:6-20.

[32] App. Exs. 6, 7.

rejection of the proposed co-existence agreement.[33]  Western National has invoked attorney-client privilege to block discovery of these communications with AIG's IP team and AIG's management team in and around April 2009.[34]  Nevertheless, because Western National disclosed the substance of the communications in the 4/28 e-mail ("Our management team very much wants to be able to use the Western National name.  I think by the end of this week, we will have the approval from AIG New York to move forward notwithstanding the ambiguity left by National Western.")—the attorney-client privilege has been waived with respect to all discussions relating to whether Western National should go ahead with the name change despite National Western's rejection of the co-existence agreement proposed by Western National.

### IV. Because Western National's Email And Letter To TDI Revealed Privileged Communications Regarding The Waived Topics, National Western Is Entitled To An Order Compelling Discovery on the Waived Topics.

<u>Documents</u>.  According to the testimony of Jim Coppedge, the following documents identified in Western National's privilege log relate to the topic of "preliminary feedback from outside counsel": Control IDs 1222, 1255, 1412, 1738, 19514.[35]  Control IDs 1424, 1426, 1734, 2012, 2017, and 2020 also appear, from the privilege log, to relate to one or more Waived Topics.[36]  National Western requests an order compelling production of, all documents concerning the Waived Topics, including but not limited to those expressly identified above.

<u>Depositions of Witnesses</u>.  National Western also is entitled to depose witnesses

---

[33] *See* App. Ex. 2 (Coppedge Dep.) at 208:8 - 210:3. App. Ex. 6.

[34] *See* App. Ex. 2 (Coppedge Dep.) at 209:17-22, 233:20 - 234:3, 235:19 - 236:9 and 275:19 - 276:10; App. Ex. 5 (Kennedy Dep.) at 29:16 - 30:10, 32:12-15, 57:8-17, 76:10-13, 109:3-7, and 119:6-13;  App. Ex. 11 (Abrams Dep.) at 106:13-25, 115:1-20, and 117:17 - 118:4; App. Ex. 12 (Poston Dep.) at 92:1-14,  103:11-18 and 116:20 - 118:2. *See also* App. Ex. 8 at No. 37; App. Ex. 13

[35] App. Ex. 2 (Coppedge Dep.) at 6:3-6, 263:8-265:19; App. Ex. 13.  Coppedge was the 30(b)(6) witness for Western National on the identification of documents relating to the Waived Topics withheld on the grounds of privilege.  App. Ex. 1 (Dep. Notice) Topics 40(v), 41(v).

[36] App. Ex. 13.

regarding the Waived Topics.[37]  National Western therefore requests an order granting leave to National Western to depose, and requiring Defendants to produce for deposition, a corporate designee of AIG, Elizabeth Pearce, and the outside lawyers Mark Liss, Mark Diliberti, and Kevin Fitzgerald.[38]  Further, because National Western was prevented from questioning previously-deposed Western National witnesses, including Jim Coppedge, Ted Kennedy, Bruce Abrams, and Steve Poston, regarding the Waived Topics, requests an order authorizing (but not requiring) National Western to re-depose the Western National witnesses to obtain answers on these issues.

### Prayer

FOR THE FOREGOING REASONS, National Western prays the Court enter an Order: (i) compelling Western National to produce all documents containing communications concerning the Waived Topics; (ii) requiring Defendants to produce for deposition a corporate designee of AIG, Elizabeth Pearce, and the outside lawyers Mark Liss, Mark Diliberti, and Kevin Fitzgerald, to testify regarding the Waived Topics; and (iii) requiring Western National to make available to National Western any Western National witness who has been previously deposed on the Waived Topics and who was instructed not to answer on the grounds of the attorney-client privilege. National Western also prays the Court grant National Western all other relief available to it at law or equity.

---

[37] *See Dot Hill Sys. Corp.*, 2006 WL 1544621 at *3 ("Because the Court holds Dot Hill waived the attorney-client privilege with respect to the Lavan e-mail, Crossroads is entitled to retain the e-mail and to inquire into all communications related to it.").

[38] AIG and Elizabeth Pearce have been served with subpoenas to testify regarding the Waived Topics and other topics. App. Ex. 14 (Subpoenas).  The parties have agreed to defer those depositions until after the court has ruled on this motion.  National Western also requests leave to extend the discovery deadline for the limited purpose of conducting these depositions.

          Respectfully submitted,

          /s/   J. Roger Williams, Jr.
          J. ROGER WILLIAMS, JR.
          State Bar No. 21555650
          Martha M. Hopkins
          State Bar No. 24059970
          ANDREWS KURTH LLP
          111 Congress Ave., Ste. 1700
          Austin, TX  78701
          (512) 320-9200
          (512) 320-9292 (fax)

          ATTORNEYS FOR NATIONAL WESTERN LIFE
          INSURANCE COMPANY

## CERTIFICATE OF CONFERENCE

     I, J. Roger Williams, Jr., conferred with counsel for Western National regarding the matters described in the foregoing *Motion to Compel* but was unable to resolve the issues described therein because Western National Life Insurance Company believes that there has been no disclosure of privileged information by Western National Life Insurance Company.

          /s/   J. Roger Williams, Jr.
          J. Roger Williams, Jr.

## CERTIFICATE OF SERVICE

This is to certify that on the 12th November, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record named below, and I also served a copy of the attached document or documents under seal by email to the attorneys of record named below:

| | |
|---|---|
| Larry S. Pozner | James J. Scheske |
| Michael A. Rollin | AKIN GUMP STRAUSS HAUER & FELD LLP |
| Glenn E. Roper | 300 West Sixth St., Suite 2100 |
| Michelle M. Berge | Austin, TX 78701 |
| Kent C. Modesitt | (512) 499-6200 |
| REILLY POZNER LLP | (512) 499-6290 (fax) |
| 511 16th St., Suite 700 | |
| Denver, CO 90202 | |
| (303) 893-6100 | |
| (303) 893 6110 (fax) | |

/s/   J. Roger Williams, Jr.
J. Roger Williams, Jr.

AUS:633305.6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **NATIONAL WESTERN LIFE** § | | |
| **INSURANCE COMPANY,** § | | |
| § | | |
| **Plaintiff,** § | | |
| **v.** § | | |
| § | **Civil Action No. 1:09-cv-00711-LY** | |
| **WESTERN NATIONAL LIFE** § | | |
| **INSURANCE COMPANY and AGC LIFE** § | | |
| **INSURANCE COMPANY,** § | | |
| § | | |
| **Defendants.** | | |

### ORDER GRANTING NATIONAL WESTERN LIFE INSURANCE COMPANY'S MOTION TO COMPEL

The Court, after considering Plaintiff National Western Life Insurance Company's ("National Western") Motion to Compel, the evidence, arguments of counsel and the entire record in this matter, has determined that National Western's Motion should be GRANTED.

The Court FINDS that Western National has waived all attorney-client communications concerning the (i) the communications between Jim Coppedge and AIG's IP team, and/or outside counsel Mark Liss, Mark Diliberti, and/or Kevin Fitzgerald concerning the name change decision, the preliminary feedback from outside counsel noting the "potential conflict," the history of coexistence with National Western, the decision to "move forward" without further inquiry, and the consensus of "all parties" that "there should not be a problem"; and (ii) the communications between Western National and AIG's IP team in and around April 2009 regarding whether to proceed with the name change in light of National Western's rejection of the co-existence agreement ("**Waived Topics**").

Accordingly, it is hereby ORDERED as follows

1.     Western National is hereby ordered to deliver to the office of National Western's counsel all documents or other communications concerning the Waived Topics on or before eleven (11) days of the date of this Order.

2.     No later than _____, 2010, Western National shall make available to National Western, at the time and place of National Western's choosing, any Western National witness who has been previously deposed on the Waived Topics and who was instructed not to answer on the grounds of the attorney-client privilege.  This deposition shall not count against National Western's hour limit on depositions.

3.     National Western is hereby granted leave to depose AIG (through its corporate representatives) and Elizabeth Pearce regarding the Waived Topics and any other topics or documents for which AIG and/or Elizabeth Pearce has been previously subpoenaed by National Western.  The discovery deadline is extended for the limited purpose of allowing the discovery in this paragraph to proceed.

4.     National Western is hereby granted leave to subpoena and depose attorneys Mark Liss, Mark Diliberti and/or Kevin Fitzgerald regarding the Waived Topics and to secure documents concerning the Waived Topics from same.  Said depositions are to occur within 21 days of production of documents and other communications pursuant to paragraph 1 above, and the discovery deadline is extended for the limited purpose of allowing the discovery in this paragraph to proceed.

5.      Defendants are prohibited from invoking the attorney-client privilege or otherwise instructing any witness not to answer questions concerning the Waived Topics.

Signed this _____ day of _____, 2010.

_____

AUS:633305.6