**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **NATIONAL WESTERN LIFE** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| **V.** | § | **Cause No. A-09-CA-711 LY** |
| | § | |
| **WESTERN NATIONAL LIFE** | § | |
| **INSURANCE COMPANY AND** | § | |
| **AGC LIFE INSURANCE COMPANY** | § | |

## <u>ORDER</u>

Before the Court are: National Western Life Insurance Company's Motion for Protective Order and Motion to Quash Subpoena Requiring the Deposition of Attorney Will Davis, filed on November 11, 2010 (Clerk's Docket No. 107); National Western Life Insurance Company's Motion to Compel Disclosure of Privileged Documents and Communications, filed on November 12, 2010 (Clerk's Docket No. 110); National Western Life Insurance Company's Motion to Compel Documents Responsive to Request for Production No. 127, filed on November 12, 2010 (Clerk's Docket No. 114); National Western Life Insurance Company's Motion to Compel Documents Responsive to Request for Production No. 120, filed on November 12, 2010 (Clerk's Docket No. 118); and the Parties' responsive briefs to the above-motions.

The District Court referred the above-motions to the undersigned for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of this Court. The Court conducted a hearing on these matters on Friday, December 3, 2010, and now makes the following rulings.

## I.    General Background

National Western Life Insurance Company ("NWL") filed the instant trademark infringement suit against Western National Life Insurance Company ("Western") and its parent company, AGC Life Insurance Company ("AGC") (collectively "Defendants"), after AIG Annuity Insurance Company changed its name to "Western National Life Insurance Company" shortly after the global financial collapse of 2008.  NWL contends that AIG Annuity's new name—Western National Life Insurance Company—created a likelihood of confusion between the two companies.

In response, Western contends that it has operated under the name "Western National Life Insurance Company" from 1948 (before NWL came into existence) to1998, when it changed its name to AIG Annuity Insurance Company for a period of about 10 years.  As noted, in 2009, AIG Annuity changed its name back to Western National Life Insurance Company.  Western has filed its own Counterclaims against NWL seeking declaratory judgments for non-infringement, invalidity and cancellation of NWL's Registrations.

The Parties have engaged in extensive discovery in this case and have filed numerous discovery motions as well.  The Court will now address the discovery motions at issue before this Court.

## II.    Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.

*Hebert v. Lando*, 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, it is well established that "[m]atters relating to discovery are committed to the discretion of the trial court." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 347 (5th Cir. 2004).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(c).  In assessing whether the burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.*

Courts may further limit discovery under Rule 45(c)(3)(A) which provides, in relevant part, that a court *must* quash or modify a subpoena that either requires the disclosure of privileged information and/or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iii).  In general, the burden of demonstrating the applicability of the privilege rests on the party who invokes it. *See* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008).  See also, *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury*, 768 F.2d 719, 721 (5th Cir. 1985).

**A.     NWL's Motion for Protective Order and Motion to Quash the Deposition of Attorney Will Davis (# 107)**

On October 28, 2010, Defendants subpoenaed Will D. Davis, NWL's outside legal counsel, for a deposition on the last day of the discovery period.  NWL objects to the deposition notice and argues that it is unreasonable, harassing, burdensome and seeks to invade the attorney-client privilege.  NWL emphasizes that Will Davis has been NWL's outside legal counsel for almost 50 years and should not have to sit for a full day deposition "that could best be described as a fishing expedition in privileged waters." NWL's Motion at p.1.  Accordingly, NWL seeks to quash the deposition under Federal Rule of Civil Procedure 45(c)(3)(A), contending that it seeks information protected by the attorney-client privilege and that the deposition would be unduly burdensome.

Defendants respond that they are seeking to take the deposition of Will Davis to discover information on the 1963 merger of National Western Life Insurance Company of Colorado and Security National Life Insurance Company of Texas, and resulting name change to National Western Life Insurance Company.  Because Mr. Davis represented NWL in 1963, Defendants contend that he has discoverable information on the merger and name change which is relevant to the issues in this lawsuit.  Defendants also argue that NWL has failed to sustain its burden to show that the proposed deposition would in fact reveal privileged information.

While the Federal Rules of Civil Procedure do not specifically prohibit the taking of an opposing counsel's deposition in a case, the Fifth Circuit has found that "depositions of opposing counsel are disfavored generally" and "should be permitted in only limited circumstances." *Nguyen v. Excel Corp.*,197 F.3d 200, 209 (5th Cir. 1999).  *See also*, *See also, Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) (noting that "federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited

circumstances."), *cert denied*, 529 U.S. 1129 (2000); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation").  In *Nguyen*, the Fifth Circuit applied the three-part test established by the Eighth Circuit in *Shelton*, to determine when opposing counsel should be permitted to be deposed in a case.  In order to depose opposing counsel, the party seeking to take the deposition must show that (1) no other means exist to obtain the information than to depose the opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is *crucial* to the preparation of the case.  *Id.* at 209 (citing *Shelton*, 805 F.2d at 1327)*. But see, In re Friedman*, 350 F.2d 65, 71-2 (2nd Cir. 2003) ("[W]"e have never adopted the *Shelton* rule and have stated specifically that the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature").[1]

Although Mr. Davis is not NWL's trial counsel of record in this case, the Court nevertheless finds that the *Shelton* test is applicable to the instant case.  First, the Court notes that *Shelton* was not

---

[1]The Second Circuit in *Friedman* explained the Circuit's more "flexible" test as follows:

[T]he standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition. Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered. *Id.* at 72.

limited to apply only in cases where a party seeks to depose the opposing trial counsel.  *See Murphy v. Adelphia Recovery Trust*, 2009 WL 4755368 at * 3 (N.D. Tex. Nov. 3, 2009) (rejecting argument that *Shelton* factors should only be applied to trial counsel).  In fact, the Eighth Circuit applied the three-factor test in *Shelton* to determine whether the opposing party's *in-house counsel* should be deposed.  *See Shelton*, 805 F.2d at 1327.  *See also*, *Delor v. Intercosmos Media Group, Inc.*, 2005 WL 1588300 at * 1 (E.D. La. June 27, 2005) (applying *Shelton* to quash deposition of in-house counsel).  In addition, courts have found that "the critical factor in determining whether the *Shelton* test applies is not the status of the lawyer as 'trial counsel,' but the extent of the lawyer's involvement  in the pending litigation." *Murphy*, 2009 WL 4755368 at * 3.  While Mr. Davis is not counsel of record in this case, he has been NWL's outside legal counsel and close advisor for nearly 50 years.  NWL attests that Mr. Davis has provided it with advice on trial strategy in this case and has been involved in trial preparation.  Thus, Mr. Davis has been part of NWL's litigation team in this case and did not merely represent NWL in a previous unrelated matter. *See Murphy*, 2009 WL 4755368 at * 3 (finding that attorney was part of litigation team even though she was not party's trial counsel where she was part of trial team for several years).  Moreover, there is no evidence before the Court that Mr. Davis merely acted as a business advisor to NWL as was the case in *Advanced Technology Incubator, Inc. v. Sharp Corp.*, 263 F. R. D. 395, 399 (W.D. Tex. 2009).  *See also, Wright v. Life Investors Ins. Co. of America*, 2009 WL  4347024, at *3 (N.D. Miss. Nov. 24, 2009) (finding that *Shelton* factors were not controlling since lawyer acted primarily in a business capacity).  Accordingly, the Court will apply the *Shelton* factors to determine whether Mr. Davis should be deposed in this case.

Defendants have failed to meet the first *Shelton* factor by demonstrating that no other means exists to obtain the information regarding the 1963 merger other than deposing Mr. Davis. As already noted, Defense Counsel stated during the hearing in this case that the only reason why it subpoenaed Mr. Davis was to obtain factual information about the 1963 merger and resulting name change to NWL. However, Defendants have failed to persuade the Court that the only way to acquire such information would be to depose NWL's legal counsel. Surely, Defense Counsel could obtain information concerning the 1963 merger from sources other than NWL's outside legal counsel, such as NWL's corporate representatives. *See Murphy*, 2009 WL 4755368 at * 4 ("The availability of corporate representatives with knowledge of relevant facts is a viable alternative to the deposition of counsel"). In fact, NWL has already provided Defendants with a copy of a October 7, 1963 letter to the stockholders of Security National Life Insurance Company which explains the reason why Security National Life Insurance Company changed its name to National Western Life Insurance Company after the merger of the two companies. See Exhibit 1 to NWL's Reply Brief (Clerk's Docket No. 711).

In addition, Defendants have failed to demonstrate that the information sought is non-privileged and *relevant* to the claims and counterclaims in this case. Other than affirming that the 1963 merger actually took place and that the companies changed their name to National Western Life Insurance Company, Defense Counsel could not point to any other non-privileged, relevant information that Mr. Davis could possibly have regarding the issues involved in this case. *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 2174925, at *2 (E.D. Tex. July 21, 2009) (holding that party failed to meet *Shelton* factors where failed to show that attorney had relevant non-privileged information). Certainly, Defendants have failed to demonstrate that Mr. Davis' potential

testimony regarding the merger and name change would be "crucial" to the issues in this lawsuit. Accordingly, Defendants have failed to meet the *Shelton* factors and have failed to demonstrate that the deposition of Will Davis should proceed in this case.

The Court also finds that the deposition of Mr. Davis should be quashed because it would be unduly burdensome under Rule 45(c)(3)(A)(iv). In general, the burden is on the moving party to show "that compliance with the subpoena would be 'unreasonable and oppressive.'" *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Id.* (citations omitted). To determine whether the subpoena presents an undue burden, courts consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Id.*

After considering the above-factors, the Court find that it would be unduly burdensome for Mr. Davis to sit for an all day deposition in this case. As noted above, the Court finds that Defendants have failed to demonstrate the relevance of Mr. Davis' potential testimony and a genuine need for the deposition. Moreover, as was discussed at the hearing in this case, the Court finds that it would be extremely difficult, if not impossible, for Mr. Davis—an attorney who has represented his client for almost 50 years—to differentiate non-privileged matters from privileged matters in this case. Accordingly, the Court finds that the deposition subpoena should be quashed under Rule 45.

Based upon the foregoing, the Court **HEREBY GRANTS** National Western Life Insurance Company's Motion for Protective Order and Motion to Quash Subpoena Requiring the Deposition of Attorney Will Davis (Clerk's Docket No. 107)

### B.  NWL's Motion to Compel Disclosure of Privileged Documents and Communications (# 110)

In its Motion to Compel, NWL argues that Defendants waived the attorney-client privilege with regard to all confidential communications with AIG and outside legal counsel by sending an e-mail and letter to the Texas Department of Insurance ("TDI").

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "A corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services." *Nguuyen*, 197 F.3d at 206. The privilege applies not only to communications with outside counsel, but also to communications between a client corporation and its inside counsel. *See AHF Community Development, LLC v. City of Dallas*, 258 F. R. D. 143, 146 (N.D. Tex. 2009).

The attorney-client privilege protects only *confidential communications* of the client to the attorney. *Industrial Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson,* 953 F.2d 1004, 1007 (5th Cir. 1992). Thus, the "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Id.* at 538 (quoting *United States v. Davis*, 636 F.2d 1028, 1043 n.

18 (5th Cir.), *cert. denied*, 454 U.S. 862 (1981)).  As the Fifth Circuit in *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984), explained:

> To retain the attorney-client privilege, the confidentiality surrounding the communications made in that relationship must be preserved. The purpose of the privilege is to foster full client disclosure to the lawyer; the privilege exists to assure the client that his private disclosures will not become common knowledge. The need to cloak these communications with secrecy, however, ends when the secrets pass through the client's lips to others. Thus, a breach of confidentiality forfeits the client's right to claim the privilege.

The confidentiality of a client's communications to his lawyer may be compromised either through the publication of evidence of the communications themselves or through the publication of evidence of his lawyer's statements or documents that disclose the client's *confidential communications*. *Industrial Clearinghouse*, 953 F.2d at 1007.

As noted above, NWL argues that Defendants waived their attorney-client privilege with regard to all privileged communications with their in-house and outside legal counsel by sending an e-mail and letter to TDI.  Specifically, NWL points to an e-mail sent by Jim Coppedge, General Counsel for AIG, addressed to Ted Kennedy, an AIG attorney who handles government relations with TDI for AIG entities.  In the e-mail sent on April 28, 2009, Coppedge states, in relevant part, the following:

> Given the marketing issues associated with the AIG name, the Company's management team made a decision in early January to return to the use of the Western National Life Insurance Company name. At that time, I discussed the decision with AIG's intellectual property team in New York, and we obtained preliminary feedback from outside counsel, noting the potential conflict with National Western Life Insurance Company. Given our almost thirty (30) year history of coexistence with National Western, we decided to move forward without making further inquiry.
>
> * * *
>
> I think by the end of the week we will have the approval from AIG New York to move forward notwithstanding the ambiguity left by National Western.

10

Exhibit 6 to Appendix in support of NWL's Motion to Compel.

The same day he received the e-mail, Kennedy forwarded it to TDI Commissioner Danny

Saenz and stated, in relevant part, the following:

> Forgive the informality of this information, but I didn't want to waist [sic] any time
> in getting it to you . . . . As noted below, we are now concerned that one of our
> competitors, National Western Life Insurance Company might take action against us.
> Accordingly, please consider this our formal request to extend the time with which
> we have to provide our policyholder notice while we address this concern and also
> serve as an intermediary or in some other capacity to help facilitate a quick resolution
> with National Western.

Exhibit 6 to Appendix in support of NWL's Motion to Compel.  The next day, on April 29, 2009,

Kennedy sent a follow-up letter to Saenz formally requesting a tolling of the 45 notice requirement.

In the letter, Kennedy states in part the following:

> Given the marketing issues associated with the AIG name, the Company's
> management team made a decision in early January to return to the use of the
> Western National Life Insurance Company name. At that time, AIG intellectual
> property team in New York obtained preliminary feedback from outside counsel,
> noting the potential conflict with National Western Life Insurance Company. All
> parties agreed, given our almost thirty (30) year history of coexistence with National
> Western, there should not be a problem.

Exhibit 7 to Appendix in support of NWL's Motion to Compel.

NWL argues that the above-communications waived Defendants' attorney-client privilege

with regard to all communications to AIG and its outside legal counsel regarding any potential name

change/conflict with NWL.  The Court disagrees.  In  order to find that Defendants waived the

attorney-client privilege in this case, the Court must find that: (1) *privileged or confidential*

*communications* were actually disclosed by Defendants; (2) Defendants intended to waive the

privilege; and (3) that it would be unfair and inconsistent with the privilege for Defendants to invoke

the privilege. *United States v. Seale*, 600 F.3d 473, 492 (5th Cir.), *cert. denied*, 131 S.Ct. 163 (2010);

*Nguyen*, 197 F.3d at 206; *El Paso Co.*, 682 F.2d 530 at 539.  The above correspondence fails to meet these requirements.

First, the Court notes that the letter and e-mails at issue did not reveal any privileged or confidential communications between the Defendants and their lawyers.  Western's communications merely note that they have sought advice from their attorneys that there may be a possible conflict with NWL regarding the name change.  The communications do not disclose the confidential advice and the opinions of their legal counsel.  General assertions that a party's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege.  *See Nyguen*, 197 F.3d at 206 ("Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected by the privilege."); *United States v. Robinson,* 121 F.3d 971, 976 (5th Cir. 1997) ("The fact of representation, or an attempt at securing it, is generally not within the privilege."), *cert. denied*,  522 U.S. 1065 (1998); *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) ("An averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice").

The communications at issue also do not meet the second requirement to show waiver—that Western intended to waive the privilege by sending the e-mails.  In order to satisfactorily answer this question, "the evidence must support a finding that [Western], the holder of the privilege, intended to waive it."  *Seale*, 600 F.3d at 492.  The evidence before the Court does not support such a finding.  Rather, the evidence shows that Western was providing the TDI with background facts regarding the name change in order to receive an extension on TDI's notice requirement.  Moreover, Coppedge has provided sworn testimony that Western did not intend to waive any privilege by sending the

letter and e-mails.  NWL has failed to point to any evidence that shows that Western intended to waive the privilege.

The last factor in the Court's analysis—that it would be unfair and inconsistent with the privilege for Western to invoke the privilege—also does not support finding that there was a waiver of the attorney-client privilege in this case.  Despite NWL's claims to the contrary, there is no evidence showing that it would be unfair for Western to retain the attorney-client privilege in this case with regard to the communications at issue.  There is no evidence that NWL has used any confidential communications with its attorneys as a sword and a shield in this case.  *See Willy v. Administrative Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("In other words, when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege").  That is, Western has not used whatever advice it received from its counsel regarding the trademark issues implicated by the name change as evidence in this case.  In fact, finding a waiver of the privilege with regard to all of Western's communications with outside counsel clearly would be an unfair result in this case.

Based upon the foregoing, the Court finds that Western did not waive their attorney-client privilege with regard to communications with AIG and outside counsel by sending the above letter and e-mails to TDI.  Accordingly, the Court **HEREBY DENIES** National Western Life Insurance Company's Motion to Compel Disclosure of Privileged Documents and Communications (Clerk's Docket No. 110).

### C.     NWL's Motion to Compel Documents Responsive to Request for Production No. 127 (#114)

In Request for Production No. 127, NWL seeks "[a]ll documents containing or concerning communications with or received by Western National Life Insurance Company in or after January

1, 2009, concerning 67 Western annuity policy holders.  NWL contends that the specified 67 policy holders of Western mistakenly sent correspondence to NWL regarding their Western annuities. Thus, NWL seeks the discovery to demonstrate "actual confusion" caused by Western's name change.  Defendants object to the discovery request as overbroad, unduly burdensome, harassing and not reasonably calculated to lead to admissible information.

As noted, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Clearly, Request for Production No. 127 seeks information that is relevant to NWL's claims in this case.  Moreover, the Request is narrowly tailored and would not present an undue burden for Defendants.  In fact, Defendants conceded at the hearing that it would be able to gather the requested information in as little as 10 minutes per policyholder.

Based upon the foregoing, National Western Life Insurance Company's Motion to Compel Documents Responsive to Request for Production No. 127 (Clerk's Docket No. 114) is HEREBY GRANTED.

**D.    NWL's Motion to Compel Documents Responsive to Request for Production No. 120 (# 118)**

Lastly, in Request for Production No. 120, NWL  requests "[a]ll documents (from 2002 to the present) concerning sales results or other data concerning sales of fixed annuities reported by Western National Life Insurance Company to Kehrer Consulting for use in the Kehrer Report."  The Kehrer Report is a quarterly newsletter that tracks trends in bank sales of annuities and ranks insurers based on their sales in the bank channel.  Since 1996, the Kehrer Report has ranked Western as the number one seller of fixed annuities in banks.  NWL contends that it seeks Western's sales results in order to "test and confirm" Western's allegation that it is number one in the fixed annuity sales

in banks for the last 15 years, a fact "submitted to show that there is no likelihood of confusion." NWL's Motion to Compel at p. 3.

Western objects to the request as unduly burdensome, harassing and an attempt to obtain irrelevant documents. The Court agrees. NWL has failed to demonstrate that Western's sales figures for the past nine years are relevant to any issue in this case. As Western emphasized at the hearing, Western's sales figures could not be used to "test and confirm" Western's ranking in the Report since NWL would have to compare Western's sales figures with the sales figures from all of the other insurers in the industry which were mentioned in the Report. In addition, NWL has already had an opportunity to test the findings of the Kehrer Report in its deposition of Dr. Kenneth Kehrer, the publisher of the Report.

Based upon the foregoing, National Western Life Insurance Company's Motion to Compel Documents Responsive to Request for Production No. 120 (Clerk's Docket No. 118) is **HEREBY DENIED.**

SIGNED this 13th day of December, 2010.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE